# EXHIBIT A

**JUDGE CASTEL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNI-SCREW EUROPE BV,

                      **Plaintiff,**

           v.

UNISCREW WORLDWIDE, INC. and
STEWART TIPPING,

                      **Defendants.**

**'07 CIV 7033**

No. 07 CV _____ ( )

**COMPLAINT**

AUG 0 6 2007

U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff Uni-Screw Europe BV ("BV"), by and through its attorneys, Arent Fox Kintner Plotkin &

Bird LLP, as and for its Complaint against Defendants UniScrew Worldwide, Inc.

("Worldwide") and Mr. Stewart Tipping ("Tipping"), states and alleges as follows:

### I.    Jurisdiction and Venue

      1.      This is an action for Defendants' intentional and willful breach of the

terms of a License Agreement that the Parties entered into on September 14, 2006 (the

"Agreement"), their tortious interference with BV's contractual relations, and their

tortious interference with BV's prospective business relations.

      2.      This Court has jurisdiction over the subject matter of this action pursuant

to 28 U.S.C. § 1332 because the action is between citizens of a State and citizens of a

Foreign state, and the amount in controversy exceeds $75,000 exclusive of interest and

costs.

      3.      Defendants are subject to personal jurisdiction in this District because, in

the Agreement that is the subject of this action, they consented to the exclusive

jurisdiction of the federal courts in the Southern District of New York for the resolution

of disputes arising out of the Agreement, and because, upon information and belief,

Defendants transact business in New York and/or contract to supply goods or services in New York.

4.    The choice of law and forum selection clauses in the Agreement are valid and enforceable pursuant to New York General Obligations Law §§ 5-1401 and 5-1402, as the transaction contemplated by the Agreement involves amounts in excess of $1,000,000.

5.    Venue in this District is appropriate pursuant to 28 U.S.C. § 1391(a)(3) and (d) because Defendant Worldwide is subject to personal jurisdiction within this District, and Defendant Tipping is an alien who may be sued in any district.

## II.    The Parties

6.    Plaintiff BV is a Dutch private limited liability company with its principal place of business and headquarters located at Pieter Goedkoopweg 24, 2031 EL Haarlem, The Netherlands.  BV is engaged in the business of licensing distributors to promote, sell and distribute Uni-Screw ® fasteners and Uni-Screw®-related products throughout Europe.

7.    On information and belief, Defendant Worldwide is a corporation organized under the laws of Tennessee, with its principal place of business located at 912 Westcourt Drive, Knoxville, Tennessee 37919.  Worldwide is a licensing company which purportedly holds intellectual property rights in various countries pertaining to and embodied by the Uni-Screw® fastener and Uni-Screw®-related products such as drivers and other tooling applications.

8.     On information and belief, Defendant Tipping is the President of

Worldwide and is a citizen of the United Kingdom who resides at 6 New Cottages, The

Green Lymington Road, East End, Lymington, Hampshire SO41 5SL United Kingdom.

### III.     Relevant Facts and Terms of the Agreement

9.     On September 14, 2006, Worldwide and BV executed a License

Agreement (the "Agreement," *attached as* Exhibit A) which permitted BV to exploit

certain designated trademark and patent rights allegedly owned by Worldwide in

exchange for fair and valuable consideration.

10.     Under the Agreement, in addition to granting certain intellectual property

rights for said consideration, Worldwide also agreed to assume specific obligations,

including but not limited to the following:

    a.     the obligation to deliver to BV, among other items, the "Production

Suitcase" (defined in Exhibit A, Appendix A as, among other things, "all manufacturing

specifications and requirements…relating to the Licensed Products and Methods, all

documentation…relating to the Licensed Technology, and the Handbook and all

documentation…relating thereto") provided that a since-occurring condition subsequent

was met (Exhibit A, ¶ 2b(iii)); and

    b.     the obligation to develop, create, and deliver to BV, by a date since

passed, the "Handbook," defined in Exhibit A, ¶ 19 as "a manufacturing handbook," and

the "Manual," defined in Exhibit A, ¶ 19 as "[a] branding manual." (Exhibit A, ¶ 19).

11.     In addition to the obligations it assumed under the Agreement, Worldwide

also made representations and warranties as to specific facts, including but not limited to

the representation that Worldwide had licensed manufacturers available to manufacture

-3-

products contemplated by the Agreement and that at least some of those manufacturers were capable of providing Sellable Products, as defined in Exhibit A, Appendix A, to BV and/or its designated representatives by no later than a date since passed (Exhibit A, ¶ 14a(vi)).

12.     Finally, Worldwide's President, Defendant Tipping, personally guaranteed to BV "the full prompt performance of all terms and obligations of [Worldwide] under th[e] Agreement" (Exhibit A, ¶ 15).

### IV.     Worldwide's and Tipping's Failure to Perform

13.     Worldwide has failed to meet its obligations incurred through the Agreement by virtue of the following:

a.     Worldwide never delivered to BV the Production Suitcase, as required by ¶ 2b(iii) of the Agreement; and

b.     Worldwide never developed, created, nor delivered to BV the Handbook or the Manual as required by ¶ 19 of the Agreement.

14.     Moreover, Worldwide's representations and warranties contained in the Agreement are untrue in at least the following respects:

a.     Upon information and belief, although Worldwide had licensed manufacturers available to manufacture products contemplated by the Agreement, those manufacturers were not capable of providing Sellable Products to BV and/or its designated representative by no later than a date since passed (compare with Exhibit A, ¶ 14a(vi)).

15.     Additionally, because Worldwide failed in at least the aforementioned respects to comply with its duties, obligations, and representations contained in the

-4-

Agreement, Tipping failed to meet his personal guarantee to deliver "full prompt performance of all terms and obligations of [Worldwide] under th[e] Agreement" (Exhibit A, ¶ 15). Additionally, upon information and belief, Tipping's delinquency in ensuring performance specifically included, but is not limited to, the following:

a. A failure to communicate with shareholders, business partners, and other licensees to ensure that the intellectual property rights transferred in the Agreement would be adequately supported as required by Agreement and understanding of the parties;

b. A failure to address the needs of coordination and communication between licensees as required by Agreement and understanding of the parties;

c. A failure to promote actively the products contemplated by the Agreement in any manner as understood and negotiated by the parties;

d. A failure to express any interest in the commercial success of the products contemplated by the Agreement such that significant monies paid to Worldwide have since been transferred to foreign personal accounts of Tipping as well as to accounts of other companies related to or controlled by Tipping, such that Worldwide's offices are no longer operational, and such that Tipping himself has since left the offices of Worldwide—and the United States altogether—without any notice to licensees and other business partners.

16.    Upon information and belief, Worldwide further failed to procure, obtain, maintain, and/or enforce the intellectual property rights that are the subject of the Agreement.

17.     Pursuant to the paragraph 18 of the Agreement, BV attempted in good faith to use all commercially reasonable efforts to discuss and resolve Worldwide's breach of the Agreement prior to filing suit, which included, but was not limited to, written correspondence and face-to-face negotiations occurring during the first fiscal quarter of 2007.

## COUNT I
## BREACH OF CONTRACT
## WORLDWIDE

18.     BV hereby repeats and incorporates the allegations contained in paragraphs 1-17 as though set forth fully herein.

19.     Worldwide entered into a valid Agreement with BV to permit BV to exploit certain intellectual property rights with the support and assistance of Worldwide.

20.     BV has at all times substantially performed all of its obligations under the Agreement and continues to do so.

21.     Between September 2006 and August 2007, Worldwide intentionally and willfully breached the Agreement, including its implied covenant of good faith, by failing to deliver to BV the Production Suitcase, as required by ¶ 2b(iii) of the Agreement.

22.     As a direct and proximate result of this breach, BV has sustained damages and will incur further damages in an amount to be proven at trial, but which BV currently anticipates to be in excess of two million dollars.

## COUNT II
## BREACH OF CONTRACT
## WORLDWIDE

23.     BV hereby repeats and incorporates the allegations contained in paragraphs 1-22 as though set forth fully herein.

24.     Worldwide entered into a valid Agreement with BV to permit BV to exploit certain intellectual property rights with the support and assistance of Worldwide.

25.     BV has at all times substantially performed all of its obligations under the Agreement and continues to do so.

26.     Between September 2006 and August 2007, Worldwide intentionally and willfully breached the Agreement, including its implied covenant of good faith, by failing to develop, create, or deliver to BV the Handbook and the Manual as required by paragraph 19 of the Agreement.

27.     As a direct and proximate result of this breach, BV has sustained damages and will incur further damages in an amount to be proven at trial, but which BV currently anticipates to be in excess of two million dollars.

**COUNT III**
**BREACH OF CONTRACT**
**WORLDWIDE**

28.     BV hereby repeats and incorporates the allegations contained in paragraphs 1-27 as though set forth fully herein.

29.     Worldwide entered into a valid Agreement with BV to permit BV to exploit certain intellectual property rights with the support and assistance of Worldwide.

30.     BV has at all times substantially performed all of its obligations under the Agreement and continues to do so.

31.     Between September 2006 and August 2007, Worldwide intentionally and willfully breached its representations and warranties included in the Agreement, including its implied covenant of good faith, because none of the licensed manufacturers

were capable of providing Sellable Products to BV and/or its designated representatives by no later than a date since passed, as required by paragraph 14a(vi) of the Agreement.

32.    As a direct and proximate result of this breach, BV has sustained damages and will incur further damages in an amount to be proven at trial, but which BV currently anticipates to be in excess of two million dollars.

**COUNT IV**
**BREACH OF CONTRACT**
**TIPPING**

33.    BV hereby repeats and incorporates the allegations contained in paragraphs 1-32 as though set forth fully herein.

34.    Tipping entered into a valid Agreement with BV to permit BV to exploit certain intellectual property rights with the support and assistance of Worldwide.  By virtue of the language contained in paragraph 15 of the Agreement, and because Tipping himself executed the Agreement in his capacity as an individual, Tipping bound himself in a personal capacity to guarantee "full prompt performance of all terms and obligations of [Worldwide] under th[e] Agreement."

35.    BV has at all times substantially performed all of its obligations under the Agreement and continues to do so.

36.    Between September 2006 and August 2007, Worldwide intentionally and willfully breached the Agreement, including its implied covenant of good faith, by failing to honor its representations contained in the Agreement and failing to perform its obligations incurred by way of Agreement.

37.    Tipping intentionally and willfully breached the Agreement, including his implied covenant of good faith, by failing to honor his guarantee that Worldwide would

render full prompt performance of all terms and obligations required under the Agreement, and by failing to correct any deficiencies in Worldwide's representations or its performance of obligations as required under the Agreement.

38.    As a direct and proximate result of these breaches, BV has sustained damages and will incur further damages in an amount to be proven at trial, but which BV currently anticipates to be in excess of two million dollars.

### COUNT VI
### BREACH OF CONTRACT
### COVENANT OF GOOD FAITH AND FAIR DEALING

39.    BV hereby repeats and incorporates the allegations contained in paragraphs 1-38 as though set forth fully herein.

40.    Worldwide entered into a valid Agreement with BV to permit BV to exploit certain intellectual property rights with the support and assistance of Worldwide.

41.    BV has at all times substantially performed all of its obligations under the Agreement and continues to do so.

42.    Defendants have failed to provide the support and assistance promised under the Agreement.

43.    Defendants have intentionally and willfully breached the Agreement.

44.    Defendants have failed to procure, obtain, maintain and/or enforce the intellectual property rights that are the subject of the Agreement.

45.    Defendants' actions as described above have wrongfully deprived BV of its right to receive the fruits of the Agreement, namely the right to exploit certain intellectual property rights.

46.    As a direct and proximate result of these breaches of the covenant of good faith and fair dealing, BV has sustained damages and will incur further damages in an amount to be proven at trial, but which BV currently anticipates to be in excess of two million dollars.

### COUNT VII
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

47.    BV hereby repeats and incorporates the allegations contained in paragraphs 1-46 as though set forth fully herein.

48.    BV has established contractual relations with various customers for the licensing of the right to promote, sell and distribute Uni-Screw® fasteners and Uni-Screw®-related products throughout Europe.

49.    BV has a reasonable expectation of ongoing contractual relations with various existing customers for the licensing of the right to promote, sell and distribute Uni-Screw® fasteners and Uni-Screw®-related products throughout Europe.

50.    Defendants were aware of BV's contractual relationships with various customers for the licensing of the right to promote, sell and distribute Uni-Screw® fasteners and Uni-Screw®-related products throughout Europe.

51.    Defendants have acted purposefully and with malice in attempting to interfere with the contractual relations of BV by and through their acts described above.

52.    As a direct result of Defendants' acts, BV has suffered and will continue to suffer monetary losses and immediate and irreparable harm to its business and goodwill for which it has no adequate remedy at law.

53.    Defendants' acts described above constitute tortious interference with contractual relations in violation of New York common law.

10

## COUNT VIII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

54.    BV hereby repeats and incorporates the allegations contained in paragraphs 1-53 as though set forth fully herein.

55.    BV has established business relations with various customers and prospective customers for the licensing of the right to promote, sell and distribute Uni-Screw® fasteners and Uni-Screw®-related products throughout Europe.

56.    BV has a reasonable expectation of additional business relations with various existing and prospective customers for the licensing of the right to promote, sell and distribute of Uni-Screw® fasteners and Uni-Screw®-related products throughout Europe.

57.    Defendants were aware of BV's business relationships with various existing and prospective customers for the licensing of the rights to promote, sell and distribute Uni-Screw® fasteners and Uni-Screw®-related products throughout Europe.

58.    Defendants have acted purposefully and with malice in attempting to interfere with the prospective business relations of BV by and through their acts described above.

59.    As a direct result of Defendants' acts, BV has suffered and will continue to suffer monetary losses and immediate and irreparable harm to its business and goodwill for which it has no adequate remedy at law.

60.    Defendants' acts described above constitute tortious interference with prospective business relationships in violation of New York common law.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff BV respectfully requests that this Court enter judgment against Defendants Worldwide and Tipping as follows:

A.      finding that Defendants have breached the Agreement;

B.      finding that Defendants have breached the covenant of good faith and fair dealing implied in the Agreement;

C.      finding that Defendants have tortiously interfered with Plaintiff's contractual relations;

D.      finding that Defendants have tortiously interfered with Plaintiff's prospective business relations;

E.      granting Plaintiff compensatory and punitive damages in an amount to be determined at trial;

F.      granting Plaintiff an award of their costs and attorneys fees incurred in bringing this action;

G.      granting such other and further relief as the Court finds just and proper.

Dated: August 6, 2007

By _____
Sarah Hsia (SH-1030)
Natalie Clayton (NC-6954)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
*Attorneys for Plaintiffs*

12

*Of Counsel:*
Bruce J. Rose (*admitted in North Carolina*)
Brian F. McMahon (*admitted in New York & California*)
ALSTON & BIRD LLP
101 S. Tryon St., Ste 4000
Charlotte, NC 28280-4000
(704) 444-1000

ECF

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Southern _____     District of     _____ New York _____

UNI-SCREW EUROPE BV,
Plaintiff,

V.

UNISCREW WORLDWIDE, INC. and STEWART
TIPPING, Defendant(s)

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:   07 CV __ (__)

**07 CIV   7033**

*JUDGE CASTEL*

TO: (Name and address of Defendant)

Uniscrew Worldwide, Inc.
~~912 Westcourt Drive~~
~~Knoxville, Tennessee 37919~~
C/O G. MARK MAMANTOV (REG. AGENT)
900 S. GAY ST., STE 1700
KNOXVILLE, TN 37902

Stewart Tipping
6 New Cottages
Green Lymington Road
East End, Lymington,
Hampshire SO41 5SL
United Kingdom

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Sarah C. Hsia
Alston & Bird LLP
90 Park Avenue
New York, NY 10016

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

AUG 0 6 2007

CLERK

_Marcos Quintero_

(By) DEPUTY CLERK

DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | 8-9-07 |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| VERNON MYERS | PROCESS SERVER |

*Check one box below to indicate appropriate method of service*

☒ Served personally upon the defendant. Place where served: 900 S. GAY ST KNOXVILLE, TN
  AT TN ACCEPTED SERVICE

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | $0.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___8-9-07___     _____
            Date             Signature of Server

**P.O. BOX 1748**
**KNOXVILLE, TN 37901-1748**

_____
Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



# Demovsky Lawyer Service
Premier Nationwide Document Retrieval
and Process Service Company

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------X

UNI-SCREW EUROPE BV,

        Plaintiff(s),                   Index No. 07 CIV 7033

        -against-                    AFFIDAVIT OF SERVICE

UNISCREW WORLDWIDE, INC., et al.,
        Defendant(s).
------------------------------------------------X

STATE OF TENNESSEE    )
                    S.S.:
COUNTY OF KNOX     )

        Verlin Myers, being duly sworn, deposes and says that he is over the age of

eighteen years, is an agent of the attorney service, D.L.S., Inc., and is not a party to this action.

        That on the 9th day of August, 2007, at approximately the time of 2:30 P.M.,

deponent served a true copy of the SUMMONS, COMPLAINT, JUDGES RULES &

MAGISTRATES RULES upon Uniscrew Worldwide, Inc., c/o G. Mark Mamantov at 900 South

Gay Street, Suite 1700, Knoxville, TN, by personally delivering and leaving the same with G.

Mark Mamantov who informed deponent that he holds the position of Registered Agent with that

company and is authorized by law to receive service at that address.

        G. Mark Mamantov is a white male, approximately 50 years of age, stands

approximately 5 feet 10 inches tall, weighs approximately 165 pounds with GRAY hair.


_____
PROCESS SERVER

Sworn to before me this
   day of August, 2007

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES
March 9, 2011

JENNIFER PLOTT
STATE
OF
TENNESSEE
NOTARY
PUBLIC
KNOX COUNTY

D.L.S., Inc.
401 Broadway
Ste 510
NY, NY 10013
212-925-1220
www.dlsny.com